May it please the Court, my name is Christopher Oram. I'm the attorney for Margaret Rudin. First and foremost, I would ask that I have two minutes for rebuttal. I'll make sure that I've stopped at the amber light. Very well. Just watch the clock as it counts down. Thank you, Counselor. I will do that, Your Honor. Thank you. In this particular case, I would argue that Ms. Rudin's time should have been equitably told and her post-conviction writ should be heard on the merits. It's important to remember that Ms. Rudin won a new murder trial on the merits of her murder trial, of her post-conviction writ in state court. In fact, in the Nevada Supreme Court, the two dissenters said that Ms. Rudin should receive a new trial that was on direct appeal. They said it was based upon ineffective assistance of counsel. The majority did not disagree. The majority said that it should be remanded down for post-conviction hearings and appointment of counsel and a writ should be heard. Then, at that point, unfortunately, she was brought into a holding cell. She was brought from the female prison. She handed a writ and other documents to the bailiff. The bailiff then took them out and Ms. Rudin was never informed that her writ was not filed. What she was told was she was appointed counsel. You have not very much time, and I have a number of questions for you, so let me just get to some of the main points, I think, here. Assume, if you would, for the moment, that the time during which Mr. Figler was representing Ms. Rudin could be equitably told under Holland. Let's just assume that. I know that may be debatable, but you took over, I believe, in 2006, Mr. Orme, is that right? No, I was actually appointed, I believe, in 2007. No, you're correct. It was August 2006. All right. You waited five years before filing a Federal petition. Why? Well, it's really quite easy. What happens is I'm appointed on the case and told to supplement the post-conviction writ. At that point, absolutely nobody realizes that a writ has not been filed. I'm – what happens is 64 bankers' boxes get – I mean, at what point did you not realize, I guess, or did you realize that a writ had not been filed? What takes place is I go through the 64 bankers' boxes and I write up a 120-page writ. On the day I'm filing it, which I pulled the transcript, which is August 22, 2007, I then come into court in front of Judge Lohr, the district court judge, and I say I am the first person ever to alert anyone that there is a difficulty, and I tell the court that – So that was August 21, 2007? August 22, 2007. Okay. But I guess my question then is why didn't you file a protective Federal petition at that time? Because at that time, the judge immediately tells the State that she finds extraordinary circumstances and she determines that the writ is timely to file. But how does that excuse you under our law from not filing a Federal protective petition? Well, Your Honor, what I – what I perceived was that the judge immediately ruled that the writ was timely. And let's just say you're wrong in your perception, which I know is – I can understand why you might, but if we are following the law here, what do we do? How do we explain that time that you could have filed? Because ultimately, there was still more delay before you were able or that you filed a Federal petition. Well, a number of different factors. First of all, I'm appointed by the State court to do the State court supplemental petition. And at that time, I would have no reason – as I put in the briefs, look at the sort of aura of what was taking place. At that point, the judge immediately says, extraordinary circumstances, the writ is timely filed, and then informs the State, if you want to challenge this, you better file something longer than a one-page document. They never do. They spend nine months responding to the merits. And then there's a hearing, and we prevail. The State has never argued time bar. So at that point, we're waiting for a new trial from Margaret Root. But then the State filed its notice of appeal from the post-conviction court's order on January 20th, 2009. In that appeal, I think it argued that the petition was untimely under Nevada law. And I'm just wondering, shouldn't that have put you on notice that the claim might lose the benefit of EDPA's statutory tolling provision? At that point, again, I thought that that was the first time that they had – the first time they ever raised this issue was on appeal after they had lost. At that point, I thought the Nevada Supreme Court would simply recognize that Judge Lohr had found that there was equitable tolling and would dismiss the State's claim. But to answer Your Honor's question, I – once I start to recognize that we're losing in the Nevada Supreme Court, before remitted or ever issues, we file it in federal court. And so that was the issue for the first time on appeal that's ever being litigated. And so to me, it seemed that the State had completely unclean hands in that they had never taken up Judge Lohr's opportunity to file time bar. And quite frankly, I never thought we'd ever come to this position because we had been successful in front of Judge Lohr. So even after – I just want to make sure I understand you. From August 22nd of 2007 through April 25th of 2011, how do we excuse that time? Because that's when you filed the Federal petition. How – what theory – under what theory would we toll that time? Under the theory of equitable tolling. What law under equitable tolling does that say? Well, I would argue a number of different factors. I would argue first under Jimenez, although it's by analogy, the United States Supreme Court considered the resetting of a clock. And in this case, I would argue that in 2007, August 22nd, that Judge Lohr essentially reset the clock. She said, this is timely filed. And so if you go back to when Margaret Rudin was in her holding cell, she believes she's filed her wedge. She's given it to the bailiff. She used up 147 days. So if that's all she's used, and then the court says, I find that this was timely filed. But didn't she, during the court proceeding, the initial court proceeding, say, I have something she wants to file.  No. No, no. The court takes it from her. She's in a holding cell. The bailiff takes it from her. And then she is never brought into the court. But the court then announces that she's been appointed post-conviction counsel, and then they give status checks for all of these supplements. And that's why I think it's so unusual that the state of Nevada would say that Margaret Rudin should or did know, because they didn't know. You know, the ethical dilemma that I faced was once I recognized this, I realized I was the only person who knew. And I believe as we stand here today, if I had never, ever mentioned this, and I had not followed my ethical duty, no one would have ever known. And Margaret Rudin would have prevailed. Did you know – I mean, when you were appointed to represent Ms. Rudin, what did you understand in terms of the scope of your representation? Did you know at that time that you were her lawyer, both for the – to represent her at the state and Federal proceedings? No. We were never appointed for Federal proceedings. In other words, I was not – when I finally, eventually filed a Federal petition, I didn't get paid for that. I'm only the state court attorney for her. That's all I'm paid for. I'm counsel in that regard only. And so I was working on the state court petition, and we were winning. And there was no argument at all that there was any difficulty whatsoever. This lady was receiving a new trial. I do recognize that I only have a minute, 42, left. I really didn't want to have some rebuttal, but if there are more questions, I'm more than happy. You may have rebuttal, counsel. Thank you. We'll hear from the state. May it please the Court. Good morning. My name is Jamie Resch, and I'm here on behalf of the Respondents. My message today is simple. The Supreme Court's decision in Pace bars relief in this matter. It does that for a couple of reasons. It confirms the unavailability of equitable tolling in a situation such as we have here today. And it rejects the notion that waiting for state court proceedings to be over with to determine whether or not issues of timeliness have gone in the petitioner's favor is not a strategy that will work. There are a surprising number of similarities between the case presented here today and the Supreme Court's decision in Pace, for example. The state petition in Pace did not address the issue of untimeliness. We see the same situation in the instant case when it was filed in 2007, whereas there was misrude and admits that that petition is untimely filed and is given a space to explain why she leaves it blank. This is arguably what leads to the issue being decided eventually by the Nevada Supreme Court during the appellate process, and the same sort of situation played out in Pace, where the initial petition was accepted but later found to be untimely on appeal in state court. Additionally, the petitioner claimed it was unfair in Pace to apply to the AEDPA time bar after years of state court litigation. The Supreme Court ultimately rejected that position and said, well, if you have any concerns at all about timeliness, you need to file a Federal petition as soon as possible. Let me ask you what might be different in this case from Pace. In this case, at the post-conviction proceeding, one of them, the state addresses the timeliness question, but the State then doesn't do anything to follow up on it, doesn't file a brief. I mean, I think it was at one point the State said, oh, I think it may be untimely. The Court says, well, let me consider that, file something, and the State never filed anything at all. And I'm just trying to figure out, would that constitute extraordinary circumstances under Holland? I don't believe that it would, and that's absolutely a fair question for us here today, so let me address that as best I can. My first response would be that as far as the record is concerned, the Nevada Supreme Court said the State did object during that proceeding. So that's a finding of fact that we should uphold here today because it is supported by the record. There was an objection made by the State at that hearing, and then there is some back and forth, and I admit it may be even more. That's in the Supreme Court opinion, you say? The Nevada Supreme Court makes that finding of fact, and it's at, I think, EOR 562. Thank you. So they do make, the Nevada Supreme Court makes that finding. So my position would be that the State did object at that proceeding. Now, to the extent they could have objected better or should have filed something else, I would simply tell the Court this, that as Mr. Orem has explained in his opening brief, I believe this is on pages 14 and 19, his position was, and I think it's a reasonable reading of the record, that the State court ruled in his favor during that proceeding. So there wasn't anything else to revisit. Ultimately, the State objected, and it's a reasonable reading of the record to say they lost. The next rational step that one would take in such a position is to raise the issue on appeal. There was nothing else to debate before that judge. And I believe when, if you read the record where she's making that ruling, let's call it, there is some back and forth. And even after the State raises the issue and asks for more time, she says, but I'm ultimately going to make this finding. So that's the record that we have. That's the interpretation that the Nevada Supreme Court gave. The record is very disturbing in this case and reflects a significant miscarriage of justice. I mean, do you agree or not? Are we talking about her underlying trial? Well, yes, everything relating to it. I mean, that's why I have a number of questions. I mean, we have a trial that was fraught with issues. And, in fact, the State court of appeals on direct appeals, I mean, the Supreme Court of Nevada recognized that but said, you know what, we're going to hold off to decide this. We recognized. And, in fact, it was a very split decision, a very powerful dissent, saying we should recognize that there were problems with her representation. Some of them, I think, were undisputed. And they said, no, we're going to take this up at post-conviction. So at post-conviction, apparently it looks like Ms. Rudin does, I think, whatever she can, and the record suggests the State didn't even know what was going on with the post-conviction court. And I'm just trying to figure out, can a prisoner be expected to know more than the DA's office on whether or not this was filed? And I guess the most troubling for me is the post-conviction trial court saying the reasons why she would have granted, I don't know if it was a he or she, would have granted it. But that because that it's appeared to be a miscarriage of justice in her view, after looking at everything, and that it's very likely that Ms. Rudin didn't even commit the crime. So we have somebody here who really hasn't had a fair day in light of all the issues and is facing a significant sentence. And so I just would like to hear your response to that. Okay. Well, her trial is lengthy. We know this. And she had multiple attorneys during that trial. I guess at this point, it's hard to go back and say, well, here's what happened or here was the mistakes that were made. I would never want to make that presumption be absent her having actually presented those issues to a court and having them determined. She has had the opportunity to raise these in a state court petition. She has had the opportunity to file a federal petition. And there were warning signs all along the way from as early as 2005 that she wasn't proceeding in a manner that was going to allow her to have her claims heard. And at any point from 2005 where she's present in court and hears that, hey, guess what, nothing's been filed, from the point in 2007 when she signs an affidavit and says, oh, that's my first petition and it's untimely, all the way up to the point in May of 2010 when the Madison Court issues its order of reversal and says the state court proceedings were untimely. All along this six-year stretch of time, a reasonable petitioner applying reasonable diligence would have said to herself, well, gee, I better file something in front of the court and have my claims heard. But if the court and the state and her own attorney don't recognize or manifest that something has not been filed, what is she supposed to do? But she is aware that nothing's been filed. How is she aware? Well, again, in 2005, she's present in court when it's discussed right in front of her. Nothing has been filed yet. In 2007, she's aware that her state petition is late. All along the way, she doesn't have an attorney appointed in federal court. It's her responsibility to get her federal petition on file. She doesn't take any steps whatsoever to do that. I mean, the record is completely devoid of even an allegation that she even tried, that she made any inquiry, that she asked for counsel to be appointed, that she filed a skeleton petition. We don't have any of that stuff. We do have that she's clearly able to communicate with the courts when she wants to, regardless of whether she's represented by counsel or not. She simply made no effort. And so perhaps the easiest way to address this case, even if there are concerns about the underlying merit of the claims, would be able to say, well, even as late as 2010, you're aware that your state petition's untimely. It's time for you to act. It's time to come to federal court. And even at that point, she waits 11 months. There isn't a single case cited in the briefs by either side that says an 11-month delay that's unexplained is diligent. In fact, the line is a lot closer to three, four, and five months in terms of when we're going to say someone has acted with diligence or not. So even if he wanted to give some credence to her claims, that 11-month delay at the end of the case is not diligence. Counsel, what's your response to opposing counsel's comment that the state trial judge reset the clock in 2007? Okay. I fear in response to that that we are mishmashing the concept of state post-conviction court and federal court. And I simply don't see a case cited by anybody, and it makes no sense to me how a state court judge could somehow reset the federal EDPA time bar. That's essentially what their position is trying to be. But I just don't see how that could happen, how anything that the state court judge could affect that. At all times, Ms. Rudin was responsible for her own federal petition. Nothing about what was going on at state court stopped her other than this misguided theory that she was so-called winning in state court and didn't think she needed to do anything. And that's exactly what the Supreme Court said is not going to work in its pace with this decision. I don't know if there are no further questions. No further questions. Thank you, counsel. All right. Thank you, Your Honor. Mr. O'Rourke, you have some reserve time. I'm sorry. I just had one question. You filed a motion to expand the record on appeal? I did. Why wasn't that information in the district court? You know, that's record. That would be better, of course. You know, at the time, I guess my response to that would be I feel there has been a certain level of evolving theories presented by the petitioner. And in trying to respond to those, it suddenly became clear that there was this argument regarding the 2005 hearing, which wasn't particularly relevant to the proceedings in district court. But it certainly illuminates some of what we're discussing here today in terms of her knowledge of whether or not anything had been filed in state court. So I apologize for that. It's certainly better to have a complete record from the get-go. But nonetheless, it is a part of the state court record, and I think there's ample authority for us to be able to consider that here today. Thank you. Thank you. Thank you, counsel. Mr. Orem, you have some reserved time. Yes. Thank you. It's not true that she knew in 2005. The record does not reflect that. It's false. A reading of that transcript, that is a false argument. And I have brought the 2007 transcript where I tell the Court for the first time what has taken place. The Court says, so that would be the extraordinary circumstance that we would find that would allow the petition for post-conviction relief be filed. The Court then tells the State, and I would presume the State is not going to just give me a one-page response that says it's too late. That's what I would presume. And the prosecutor says, no, no, they never file anything, never. Why it should be told, there's nothing in 2005. In 2007, I do the ethical thing. At that point, she has never realized that her petition has not been heard. And so at that point, the State does nothing. They wait 16 months. They lose on the merits. Then they appeal. During the appellate time, I would argue it was told. And when I realized, even though I was not her federal attorney, I was not paid to do that, I recognized, boy, there's a problem, and filed in federal court. We have done everything, she did everything she could to litigate this matter, absolutely everything. Does this Court have any inherent equity powers to grant your client relief? I believe it does. Under Jimenez, under Lott v. Mueller, under Corgiasso, where they lost the petition in Corgiasso, they mishandled it, the district court. And also under Spitson v. Moore, another case from this Court, where the attorney failed to file anything for years. I think under equitable tolling, this lady, she's a 70-year-old lady who had a great post-conviction. The merits were fabulous. She won. All the justices, all the judges who heard it thought she had merit. This is a terrible miscarriage of justice. With that, I would submit it. Thank you, counsel. The case just argued will be submitted for decision.
judges: Adelman, O'scannlain, Murguia